**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION<br><br>JACQUELINE L. MORELAND,<br><br>       Plaintiff,<br><br>v.<br><br>NOVO NORDISK INC. and NOVO NORDISK A/S,<br><br>       Defendants. | **MDL NO. 3094**<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON<br><br>**COMPLAINT AND JURY DEMAND**<br><br>CIVIL ACTION NO.: _____ |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, files this **Short-Form Complaint and Demand for Jury Trial** against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in **Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")**, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this **Short-Form Complaint** as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

**IDENTIFICATION OF PARTIES**

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): **Jacqueline L. Moreland**.

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: **Not applicable.**

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): **Not applicable.**

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: **Not applicable.**

**Defendant(s)**

5. Plaintiff is suing the following Defendant(s) (check all that apply):

    __X__   Novo Nordisk Inc.

    __X__   Novo Nordisk A/S

    _____   Eli Lilly and Company

    _____   Lilly USA, LLC

    _____   other(s) (identify): _____

## JURISDICTION AND VENUE

6. City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence): **Raytown, Missouri.**

7. State where Plaintiff/Decedent was prescribed the GLP-1 RA Product(s) at issue: **Missouri.**

8. State of Plaintiff's/Decedent's residence at time of their use of the GLP-1 RA Product(s) at issue: **Missouri.**

9. City and state of Plaintiff's/Decedent's residence at time of diagnosis of injury: **Raytown, Missouri.**

10. Jurisdiction is based on:

    __X__   diversity of citizenship pursuant to 28 U.S.C. § 1332

    _____   other (plead in sufficient detail as required by applicable rules): _____

11. The District Court(s) where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered: **United States District Court for the Western District of Missouri.**

12. Venue is proper in the District Court identified in Paragraph 11 because:

    __X__   a substantial part of the events and omissions giving rise to Plaintiff's claims occurred there

    _____   other (plead in sufficient detail as required by applicable rules): _____

13. If applicable, identify the citizenship of any additional Defendant(s) named above: **Not applicable.**

## PRODUCT USE

14. Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

    __X__   Ozempic (semaglutide)

    _____   Wegovy (semaglutide)

    _____   Rybelsus (oral semaglutide)

\_\_\_\_\_ Victoza (liraglutide)
\_\_\_\_\_ Saxenda (liraglutide)
\_\_\_\_\_ Trulicity (dulaglutide)
\_\_\_\_\_ Mounjaro (tirzepatide)
\_\_\_\_\_ Zepbound (tirzepatide)
\_\_\_\_\_ Other(s) (specify): _____

15. To the best of Plaintiff's knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s): **Ozempic: approximately June 2021 through July 2021.**

## INJURIES AND DAMAGES

16. To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):
\_\_\_\_\_ Gastroparesis
\_\_\_\_\_ Other gastro-intestinal injuries (specify) _____
\_\_\_\_\_ Ileus
\_\_\_\_\_ Ischemic Bowel/Ischemic Colitis
\_\_\_\_\_ Intestinal Obstruction
\_\_\_\_\_ Necrotizing Pancreatitis
\_\_X\_\_ Gallbladder Injury (specify) **cholelithiasis, cholecystitis, and biliary dyskinesia, requiring laparoscopic cholecystectomy on July 14, 2021, and the sequelae thereof.**
\_\_\_\_\_ Micronutrient Deficiency
\_\_\_\_\_ Wernicke's encephalopathy
\_\_\_\_\_ Aspiration
\_\_\_\_\_ Death
\_\_\_\_\_ Additional/Other(s) (specify): _____

17. Plaintiff's/Decedent's injuries occurred in approximately (month and year): **July 2021.**

18. In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):
\_\_X\_\_ Injury to self
\_\_\_\_\_ Injury to person represented
\_\_X\_\_ Economic loss
\_\_\_\_\_ Wrongful death
\_\_\_\_\_ Survivorship
\_\_\_\_\_ Loss of services
\_\_\_\_\_ Loss of consortium
\_\_\_\_\_ other(s) (specify): _____

**CAUSES OF ACTION**

19. In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

    __X__    Count I: Failure to Warn – Negligence
    __X__    Count II: Failure to Warn – Strict Liability
    __X__    Count III: Breach of Express Warranty/Failure to Conform to Representations
    __X__    Count IV: Breach of Implied Warranty
    __X__    Count V: Fraudulent Concealment/Fraud by Omission
    __X__    Count VI: Fraudulent/Intentional Misrepresentation
    __X__    Count VII: Negligent Misrepresentation/Marketing
    __X__    Count VIII: Strict Product Liability Misrepresentation/Marketing
    __X__    Count IX: Innocent Misrepresentation/Marketing
    __X__    Count X: Unfair Trade Practices/Consumer Protection (see below)
    __X__    Count XI: Negligence
    __X__    Count XII: Negligent Undertaking
    _____    Count XIII: State Product Liability Act (see below)
    _____    Count XIV: Wrongful Death
    _____    Count XV: Loss of Consortium
    _____    Count XVI: Survival Action
    __X__    Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules): **Counts V & VI — see Attachment "A" (Fraud Supplement).**

20. If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:

    a.   Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims: **Mo. Ann. Stat. §§ 407.020(1), 407.025 (Missouri Merchandising Practices Act).**

    b.   Identify the factual allegations supporting those claims (by subsection, if applicable): **See Attached Attachment "B" (Unfair Trade Practices / Consumer Protection Supplement).**

*\* Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21. If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above: **Not applicable. Plaintiff is a citizen of Missouri, which has not enacted a Product Liability Act subsuming product-liability claims. See Master Complaint ¶ 906. Plaintiff therefore does not assert a Count XIII**

**claim and instead asserts the individual causes of action checked in Paragraph 19 above.**

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22. If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)?  **No. Pre-suit notice is not required under the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.020 and 407.025, for Plaintiff's claims.**

## RELIEF

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the Master Complaint, as appropriate, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Dated: June 25, 2026

Respectfully submitted,

FARR LAW FIRM, P.A.

/s/ George T. Williamson
George T. Williamson,
FL Bar No. 85585
99 Nesbit Street
Punta Gorda, FL 33950
Telephone: (941) 639-1158
Email: gwilliamson@farr.com

*Attorney for Plaintiff*

**ATTACHMENT "A"**
**FRAUD SUPPLEMENT (COUNTS V & VI)**

1. Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Product (Ozempic) used by Plaintiff.

3. At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiff and her prescribing physicians.

4. Defendants knew or should have known that their GLP-1 RA Products were unreasonably dangerous and caused gallbladder and other gastrointestinal adverse effects of a greater severity, intensity, frequency, and duration than represented.

5. Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6. Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiff and her prescribing physicians to use and prescribe the GLP-1 RA Products.

7. Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

   a. Risk of Gallbladder Injury: Concealing the true risk of severe and debilitating gallbladder and biliary disease, including cholelithiasis (gallstones), biliary sludge, cholecystitis, biliary dyskinesia, and the need for cholecystectomy (surgical removal of the gallbladder).

   b. Gallbladder Mechanism: Concealing that the GLP-1 RA Products impair gallbladder motility and emptying and promote bile stasis and the crystallization of bile, thereby increasing the risk of gallstones, cholecystitis, and related biliary injury.

   c. Under-Reporting of Risk: Concealing that Defendants performed research, testing, and post-market surveillance in a manner that would lead to under-reporting of the severe risks, including the gallbladder and biliary risks, of using the GLP-1 RA Products.

   d. "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

e.  "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which can lead to negative health outcomes.

8. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b.  Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "Oh - no increased risk!," which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. While the commercial mentioned common gastrointestinal side effects such as nausea and vomiting, it intentionally minimized the risk and concealed and omitted all mention of serious adverse events that Defendants knew or should have known to be associated with Ozempic use, including gallbladder disease, cholelithiasis, cholecystitis, and biliary injury. These omissions created a deceptive net impression intended to induce consumers to request the product.

c.  Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that minimized the risks of the GLP-1 RA Products and failed to disclose the true risk of gallbladder and biliary injury. These representations were false and misleading because Defendants concealed that these risks were serious and that their testing and clinical data under-reported them.

9. Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the minimization and omission of the gallbladder and biliary risks associated with Ozempic. In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for weight management and diabetes with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drug and Plaintiff was induced to take it.

10. Had Defendants disclosed the true risk of gallbladder and biliary injury, the inadequacy of their safety testing, and the true, qualified nature of the weight-loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

11. As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for future medical treatment and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

12. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**ATTACHMENT "B"**
**UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT**

1.  Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 850-65 as though set forth fully at length herein.

2.  Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.  Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.  The Missouri Merchandising Practices Act ("Missouri MPA" or the "Statute") prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020(1).

5.  Plaintiff and/or Defendants are "persons" under the Statute.

6.  Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.  Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.  Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.  Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Missouri. In addition, Defendants sold the GLP-1 RA Products to residents of Missouri; shipped GLP-1 RA Products to Missouri; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Missouri. Defendants' misconduct described herein significantly affected Missouri consumers.

10. As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

a.  Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

b.  Excessively advertising, marketing and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

c.  Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11. As described in the Master Complaint, including in the paragraphs cited in paragraph 856 of the Master Complaint as well as paragraphs 447 through 576 of the Master Complaint, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12. As described in the Master Complaint, including in paragraphs 577 through 601 of the Master Complaint, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13. The information referenced above that Defendants misrepresented, concealed and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14. Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15. Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16. Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17. Plaintiff was exposed to and justifiably relied upon Defendants' widespread, national direct-to-consumer advertising campaign for Ozempic. In these materials, Defendants promoted the benefit of weight loss while misrepresenting and omitting the true nature, severity, and risks of the product, including the risk of gallbladder and biliary injury. This advertising exposure included, but was not limited to, frequently seeing the "Oh, Oh, Oh, Ozempic" (Magic) television commercials on national television both before and during the period Plaintiff was using the product. This commercial falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "Oh - no increased risk!," which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. While the commercial mentioned common gastrointestinal side effects such as nausea and vomiting, it intentionally minimized the risk and concealed and omitted all mention of serious adverse events that Defendants knew or should have known to be associated with Ozempic use, including gallbladder disease, cholelithiasis, cholecystitis, and biliary injury.

18. Plaintiff Jacqueline L. Moreland is a Missouri resident with type 2 diabetes. On or about June 11, 2021, her treating physician prescribed Ozempic (semaglutide) 0.25 mg in connection with the management of her diabetes and weight, and the visit documented weight-management counseling and lifestyle modifications including weight loss. Within approximately four to five weeks of beginning Ozempic, Plaintiff developed acute gallbladder disease, including cholelithiasis with biliary sludge, cholecystitis, and biliary dyskinesia, and underwent a laparoscopic cholecystectomy (gallbladder removal) on July 14, 2021. Had Defendants disclosed the true risk of gallbladder injury associated with Ozempic, and the true and limited nature of its weight-loss benefits, Plaintiff and her prescribing physician would not have selected Ozempic.

19. Defendants knew that the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

20. In violation of the Statute, through a pervasive pattern of false and misleading statements and omissions to health care providers and consumers, Defendants engaged in unlawful intentional conduct by overstating benefits of GLP-1 RA Products and omitting or downplaying side effects and complications of the products.

21. In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with

the sale and advertisement of goods, merchandise and/or consumer merchandise (i.e., the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

22. Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

23. Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

24. As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants' misrepresentations and omissions. Defendants expected or should have expected reasonable consumers to rely on these misrepresentations and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

25. Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 RA Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

26. The actions and omissions of Defendants are uncured or incurable.

27. As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

28. As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

29. Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.

30. No pre-suit notice is required under the Statute for Plaintiff's claims. To the extent the Missouri Merchandising Practices Act requires that a copy of this Complaint be provided to the Missouri Attorney General, Plaintiff has complied or will comply with that requirement.